### *MILLER & AL. vs. BREEDLOVE.*

Where the return of the commission shows that the interrogatories were all answered, the circumstance of their not being answered separately and by number, does not vitiate the return.

The supreme court will not notice objections which were not made in the court below.

APPEAL from the court of the parish and city of New-Orleans.

On the trial of this cause, the defendant offered the testimony of witnesses examined under a commission, to the introduction of which the plaintiff objected on the ground that the witnesses had not answered the interrogatories in succession, and one by one; and that said interrogatories had not been regularly put. The

Eastern District.
*May*, 1830.

MILLER & AL.
*vs.*
BREEDLOVE,

objection was sustained and the defendant excepted.

*McCaleb*, for appellant.

The judge below erred in rejecting the evidence taken under the commission. C. P. 431, 432, 436, 437, 438: acts of 1828, p. 152, sec. 7, 8, 9.

PORTER, J. delivered the opinion of the court. This action is brought to recover the freight of tobacco, received by the defendant as consignee. The defence set up is, that the property was damaged by the want of care of the master and officers of the steam-boat.

On the trial, the defendant offered depositions, in evidence taken under a commission; they were objected to on the ground that the witnesses had not answered the interrogatories one by one, and that said interrogatories had not been regularly put. The court sustained the objection and the defendant excepted.

The return to the commission does not show, as is usual, an answer to each interrogatory separately, and by number, but it shows they were all answered, and in the order in which they were put. Such being the

*Where the return of the commission shows that the interrogatories were all answered, the circumstance of their not being answered separately & by number, does not vitiate the return.*

fact, we do not think that the mere circumstance of the answers being written closely on the paper without breaks, or a statement that they were a reply to each interrogatory by its number, vitiates the return. The statement that all the interrogatories were put at once, appears to us gratuitous. We should rather conclude from each being answered distinctly and completely, that they were put separately, and that the manner in which they were spread on the paper was accidental. It is stated in the bill of exceptions that other objections were made to the testimony, on matters appearing, by the process verbal of the return; but these objections are not specially set out, and we cannot notice any which, do not judicially appear to have been made below.

Eastern District.
*May*, 1830.

MILLER & AL.
*vs.*
BREEDLOVE.

The supreme court will not notice objections which were not made in the court below.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed, and it is further ordered, adjudged and decreeed, that this cause be remanded to the parish court, with directions to the court not to reject the testimony, because the answers are not separate to each interrogatory; and it is further ordered, that the appellee pay the costs of this appeal.

*VANCE & AL. vs. CLARK & AL.*

If the owner voluntarily receive the goods at an intermediate port, such an acceptance constitutes the basis of the rule for a *pro rata* freight.

APPEAL from the court of the parish and city of New-Orleans.

The petition set forth, that the plaintiff entered into a contract of charter party, with the defendants for the ship Spartan, on a voyage from New-Orleans to off the south side of the river Rio Grande. That in pursuance thereof, he filled up the ship, and stipulated to pay a certain sum for the freight and primage, estimated at two thousand seven hundred dollars. That the ship proceeded on the voyage, and arrived at her place of destination, when, after landing a small part of the cargo, she was compelled by stress of weather to put back to New-Orleans. That a part of the cargo, consisting of flour and corn, which was brought back, was greatly damaged, and sold as unfit to be reshipped; and the remainder deposited by the defendants in the custom-house, until the Spartan could be put in readiness to proceed again on the voyage to Rio Grande.— That the defendants (instead of shipping the

goods by the Spartan, after the completion of

her repairs, and giving the plaintiff the option of filling her up with other goods, equivalent in bulk to the corn and flour which had been damaged and sold) were about to ship the goods to Rio Grande by another vessel. That the plaintiff had required of the defendants to place the Spartan at his disposal, according to the terms of the charter party, or to deliver up his merchandize, which had been refused. The petition concluded with a prayer for damages; that the goods might be sequestered, and the defendants enjoined from shipping or exercising any control over them.

The defendants answered, that in pursuance of the covenants stipulated in the charter party, they delivered at Rio Grande a part of the cargo, and were proceeding to deliver the whole, when, by the perils and dangers of the seas, the ship was greatly damaged, and compelled to put back to New-Orleans, to refit. That upon her arrival at the latter port, she was condemned by the port wardens, after a regular survey, abandoned to the underwriters and sold, in consequence of which they were unable to forward the remaining goods in the chartered ship, but that they procured another vessel,

and were proceeding to ship the goods, when they were stopped by the plaintiff's injunction. That inasmuch as they had delivered a part of the cargo, and would have delivered the residue, but for the wrongful interference of the plaintiff, they were entitled to two thousand seven hundred dollars, the stipulated freight, for which sum they reconvened and prayed judgment.

To this plea in reconvention, the plaintiff answered, that the Spartan, at the time of sailing, was unseaworthy and incapable of performing the voyage; that she leaked badly, and damaged the cargo to the amount of two thousand seven hundred dollars, which sum they plead in compensation to the plaintiff's claim in reconvention.

It appeared from the testimony, that the ship leaked before leaving the Mississippi, so much so, as to require two spells at the pumps night and morning. Two days out from the Balize, she encountered a gale of wind, leaked badly during the whole voyage, and the cargo suffered considerable damage.

It was admitted, that upon the return of the Spartan, a survey was held on her, and she was ordered to the ship yard to discharge. That five hundred bags of corn, in the bottom, were

so much damaged as to require to be thrown
overboard.　That upon the application of the
plaintiff, a further survey was held, when the
remainder of the flour and corn was found to
be more or less damaged, and ordered to be
sold.　It was sold, and produced the sum of
nine hundred and eighty dollars.　That the
portion of the cargo not landed at Rio Grande,
and not sold in New-Orleans, was, after the in-
stitution of this suit, shipped by the plaintiff to
Rio Grande.　That the ship was abandoned to
the underwriters, sold, and purchased by Clark,
one of the defendants.　That after the sale to
Clark, the ship was repaired, and put in as
good a condition as she was when first chartered.
It further appeared, that while under repair,
Clark notified the plaintiff, that the ship would
reload and proceed again on the voyage to Rio
Grande, as soon as she could be put in readi-
ness; to which letter, no answer appeared to
have been returned by the plaintiff.　The port
wardens testified, that the cargo of the ship
Spartan, which remained after the sale of the
damaged part, would have been insufficient to
ballast her, and that it would have been unsafe
to have proceeded to sea with only that in her.
It further appeared, that the defendants had pro-

VANCE & AL.
*vs.*
CLARK & AL.

cured another vessel to proceed to Rio Grande with the remainder of the Spartan's cargo, and were shipping the same, when stopped by the injunction and sequestration, obtained at the instance of the plaintiff. The court below rendered judgment in favor of the plaintiff, relieving him from the payment of freight, from which the defendants appealed.

*Livermore* and *Strawbridge*, for appellants.

*Watts*, for appellees, contended:

1. The chartering owners forfeited all right to freight or charter money, by refusing to place the ship at the disposal of the plaintiff, after she was repaired.

2. Damages should have been given, for the violation of their contract.

MATHEWS, J. delivered the opinion of the court. The present contest arises on a contract of affreightment by charter party, wherein the defendants, Clark & Walden, agree to freight the whole of the ship Sparta, except the cabin, to the plaintiffs, for a voyage to a place near to the mouth of the Rio Grande, on the south side of said river. The vessel was fitted up by the freighters, who

stipulated to pay a certain sum for the whole freight and primage, estimated at two thousand seven hundred dollars. The ship sailed from New-Orleans on her intended voyage, and arrived at the place of destination, where part of her cargo was unladen, according to the terms of the contract; and whilst the crew were proceeding to discharge the balance, she was forced from her moorings by stress of weather, and compelled to put back to New-Orleans, where she arrived in a shattered and unseaworthy state, with a greater part of her cargo, some of which was in a damaged state, and was sold at the instance of the shippers. The vessel was abandoned to her insurers, was sold, bought in by Clark, one of the original owners, and repaired. While undergoing repairs, she was offered by her present owner to Vance, for the purpose of completing her voyage and earning the full amount of freight, as stipulated in the charter party, by an entire delivery of the cargo. This offer was neither accepted nor refused; but some time afterwards, the owner of the ship was about to cause a part of the cargo of the ship Spartan, which had been brought back in safety to the

Eastern District.
*May*, 1830.

VANCE & AL.
*vs.*
CLARK & AL.

Eastern District.
*May,* 1830.

VANCE & AL.
*vs.*
CLARK & AL.

port *a quo,* to be shipped on board another vessel. To prevent this proceeding, the plaintiffs obtained an injunction, and had the goods sequestered, some in the hands of the collector of the port of New-Orleans, and others by the sheriff. The defendants answered, by stating the impossibility they were under, in the first instance, to land the goods at the place of destination, the injury to the ship by the perils and dangers of the sea, her condemnation, abandonment to the insurers, and sale, as an excuse for not forwarding the cargo in the chartered ship, and as giving them a right to cause the goods to be carried in another vessel, &c. They pleaded also in reconvention, and claim the whole amount of freight, as stipulated in the charter party. Their right to recover is denied *in toto* by the original plaintiffs in the injunction and sequestration. On these issues, and the evidence adduced, the cause was tried in the court below, when a judgment was rendered against the owners of the ship, from which they appealed.

The material facts of the case, are those stated and admitted by the pleadings. The

charter party was not made in such a manner as to give to the freighters a temporary ownership of the vessel. All things necessary for the voyage were provided by the owners; the ship was managed by seamen procured by them, and was under the command of a master by them appointed, who signed bills of lading for all the goods. A small part of her cargo was delivered at the port of destination, estimated at about one-eighth; the balance was brought back to New-Orleans, the port *a quo*, some damaged and some sound; the damaged goods were sold, after a survey of the port wardens, had at the instance of the freighters; those which were sound, the owners of the ship which had been chartered, were about to send to their place of destination in another vessel, but were prevented by injunction, as above stated. The note from Clark to Vance, in which the offer of the ship Spartan (after she should be repaired) is made to complete her voyage, by carrying the remainder of the cargo to the destined place, is dated on the 9th June, 1828. To this no reply appears to have been made; but on the 10th of July, Vance addressed a note to Clark, by which he protest-

ed against shipping his goods on any other vessel, and required them to be carried in the Spartan, in pursuance of the charter party, or he should consider himself absolved from all liability under his contract of affreightment, &c.

On these facts, the questions for solution are: 1. Whether the owners of the Spartan are entitled to the full freight, as stipulated in the contract of affreightment? 2d. Whether they can recover a *pro rata* freight? and if so, how much?

Owners of vessels, according to the general rule on the subject of freight, are not entitled to it, until after a delivery of the goods at the place of destination, according to the charter party. The conveyance and delivery of the cargo is a condition precedent, and must be fulfilled. A partial performance is not sufficient, nor can a partial payment, or rateable freight be claimed, except in special cases, and those cases are exceptions to the general rule, and called for by principles of equity. 3 *Kent's Com. p.* 173.

It seems, also, to be a general rule on this subject, that when a voyage is broken up by ordinary maritime perils, and the cargo be

brought back, the charter party is dissolved, and no freight is due. (*See same authority, p.* 176, *and the authorities therein referred to.*)

In the course of the argument of this cause, it was admitted on both sides, that the ship Spartan was to be considered, in this port, after her return, as in the situation of a vessel in an intermediate port, between the *termini* of her voyage, where she had put in from stress of weather, and to repair damages. In this situation, the owners had a right to retain the cargo until the ship should be repaired, and might be in a condition to proceed on her voyage, and earn full freight, if the necessary repairs could be completed in a reasonable time; and if that could not be effected, to cause the cargo to be transported in another vessel. If the latter course of conduct was one of necessity, they ought to have pursued it immediately, and transferred the whole remainder of the cargo to the vessel thus employed for its transportation to the destined place, in the least possible delay. But a change of vessels in this manner, so as to bind a freighter to the payment of full

freight, is only tolerated by absolute necessity. See 1 *Gal. R. p.* 444.

Now according to the evidence of this case, no attempt was made by the owners of the chartered ship, to send her cargo in another vessel, until after the necessity of such a change of vessels had ceased. On the 9th of June, the original ship was offered to complete her voyage, according to the stipulations of the charter party, so soon as she should be fit to proceed to sea, being then under repairs. No further communication appears to have taken place between the contracting parties, until the 10th of July, when Vance having discovered that Clark was about to send a part of the cargo of the Spartan *to its* destination, on the schooner Hetta, protested against that conduct, and required the use of the former vessel.

The necessity of change or transfer of these remaining goods, from the vessel which had been chartered to any other, for the purpose of being conveyed to their destination, having at that time ceased, the freighter had a right to require that they should be carried in the chartered ship, or as to them, to consider the contract of affreightment as dissolved.

The owners of the vessel are therefore evidently not entitled to full freight. Are they entitled to a rateable freight? and by what ratio is it to be ascertained? Neither of these questions are without their difficulties. The first is doubtful on legal principles, and the second is somewhat embarrassed by the peculiar facts and circumstances of this case.

The right "to a rateable freight is based on two grounds: 1. When the ship has performed the whole voyage, and has brought only a part of her cargo to the place of destination. 2. When she has not performed her whole voyage, and the goods have been delivered to the merchant at a place short of the port of delivery. In the case of a general ship, or one chartered for freight, to be paid according to the quantity of goods, freight is due for what the ship delivers. The contract, in such a case, is divisible in its own nature.— But if the ship be chartered at a specific sum, for the voyage, and she loses part of her cargo by a peril of the sea, and conveys the residue, it has been a question, whether the freight could be apportioned. The weight of authority in the English books, is against the apportionment of freight in such a case, &c.

Eastern District.
*May*, 1830.

VANCE & AL.
*vs.*
CLARK & AL.

In the case of a general ship or one chartered for freight to be paid according to the quantity, freight is due for what the ship delivers.

But if the ship be chartered at a specific sum for the voyage, the freight cannot be apportioned, unless in special cases.

The stipulated voyage must be actually performed. A partial performance is not sufficient, nor can a partial payment be claimed, *except in special cases.* 3 *Kent's Com. p.* 80 & 81.

Now if there be any case, in which a partial payment can be legally claimed, under a contract of affreightment by which the whole vessel is let, we are of opinion that the present furnishes one. It is true, that by the charter party, the whole of the ship Spartan was let to the freighters, except the cabin; the vessel was by them to be filled up, and they bound themselves to pay freight, at the rate of so much per barrel of five cubic feet; this rateable freight was afterwards estimated at a gross amount or sum, fixed and certain for the voyage.

The cargo was composed of dry goods, flour, corn and lumber, which would have been subjected to admeasurement in adjusting the freight. This labor was dispensed with, by aggregating the freight, which would have been erased on each seperate barrel or five cubic feet, into one whole of two thousand seven hundred dollars. If a rateable freight be allowable, the ratio by which it may

be fixed, on the part of the cargo delivered at

the place of destination, must be taken in relation to the whole, and in relation to the gross sum agreed on, as freight for the entire cargo.

*Abbot*, in his Treatise on Shipping, at *page* 300, *part* 3, *chap.* 7, *sec.* 9, after stating the doctrine to be against any apportionment of freight, in a case where a ship is chartered at a specific sum for a voyage; according to the opinion of lord *C. Hardwick*, as expressed in the case of *Paul* vs. *Birch and others*, 621; and to that of *Malyn*, supported by the authority of the case of *Bright* vs. *Cowper*, 1 *Brownlow*, *p.* 21; proceeds to say, that if the question should again arise, the determination of it would depend on the particular words of the charter party; for without a very precise agreement for that purpose, it seems hard that the owners should loose the whole benefit of the voyage, when the object of it has been in part performed, and no blame is imputable to them. In *Post* vs. *Robertson*, (1 *John.* 24,) the court held, that when a ship is chartered, for a specific sum for the voyage, the general rule is, that if part of the cargo be lost by the perils of the

sea, and part conveyed to the port of destination, there can be no apportionment of the freight under the cha ter party. By this is intended, that no recovery can be had on the charter party itself; for a majority of the court inclined to the opinion, that there might, in another form of action, be a recovery of freight, in proportion to the amount of goods brought home. *Note to p.* 300, *of Abbot.*

The words of the charter party, now under consideration, do not appear to us to be so restrictive as to render the contract indivisible; and we are not prevented from pursuing the equity of the case, by any technical rules in relation to the forms of actions, as followed in co nmon law courts.

We therefore conclude, that the owners of the ship are entitled to a ratable freight for the goods delivered on the beach, near to the mouth of the Rio Grande, the place of destination.

Those which were brought back to New-Orleans, are of two descriptions. For that part of them, which returned sound and remained unsold, and for the transportation of which to the place of destination, the ship

owners did not pursue the steps authorized by law under their contract, they are entitled to no freight. But a different question remains to be settled, in relation to the flour and corn which was damaged and sold on its return, at the instance and for the benefit of the merchants. And this leads us into an examination of the right of carriers to recover freight *pro rata iteneris per acte.*

The doctrine in this respect seems to be settled, that if the owner of the goods voluntarily accept them at the intermediate port, such acceptance constitutes the basis of the rule for a *pro rata* freight, *i. e.* if they be not forced on him by an illegal or violent proceeding. The flour and corn, in the present case, are not forced on Vance, by any illegal or violent proceeding. These articles were surveyed and sold at his instance, and it is presumed he received the price of them. The proceeding was voluntary on his part, to avoid a total loss. He is therefore to be responsible for a *pro rata* freight, if the port be really intermediate to which they were brought back. But how is that to be fixed in truth, as to these goods; no part of the voyage was performed, although the vessel went to the place of destination, and returned to the port

Eastern District.
*May*, 1830.

VANCE & AL.
*vs.*
CLARK & AL.

If the owner voluntarily receive the goods at an intermediate port, such an acceptance constitutes the basis of the rule for a *pro rata* freight.

*a quo.* The trouble and expense to the owners of the ship were probably great, but in relation to these articles, their labor has produced no benefit to the shippers. If, however, they had been left in the possession of the former, they might have saved the whole freight, by conveying them to their destined place. Having been prevented from doing this, by the latter, some rate of freight is due; the circumstance of their subtraction, may have caused the final failure of the voyage.

It is therefore ordered, adjudged and decreed, that the judgment of the parish court be avoided, reversed and annulled; and it is further ordered, adjudged and decreed, that the defendants and reconvenors, here appellants, do recover from the plaintiffs, the sum of four hundred seventy-six dollars and ninety-three cents, being the full freight of that part of the cargo of the ship Spartan, which was delivered at the mouth of the Rio Grande; and also the sum of five hundred twenty-three dollars and seven cents, being half freight for the flour and corn, which was received and sold by Vance, one of the shippers at the port of New-Orleans; making together, the sum

of one thousand dollars; and that the original plaintiffs and appellees pay the costs of this appeal; those of the parish court, to be borne equally by both parties.